NO. 07-05-0059-CR


 NO. 07-05-0064-CR

 NO. 07-05-0065-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



DECEMBER 6, 2005


______________________________



MICHAEL EDWARD KILPATRICK, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 22ND JUDICIAL DISTRICT COURT OF HAYS COUNTY;



NOS. CR-03-711, CR-04-528, CR-04-570; HON. RON CARR, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ. 

 Michael Edward Kilpatrick appeals his convictions for attempted sexual performance
by a child, attempted aggravated sexual assault, and criminal solicitation of a minor. These
convictions resulted from his contact with a law enforcement officer posing as a 13-year-old
girl (i.e. "Carrie") on the internet and appellant's attempt to meet the girl to engage in a
sexual relationship. The three issues before us concern the propriety of the State's closing
argument. We affirm the judgments. 

Issue One - Comment on Fifth Amendment Privilege


 Through the first issue, appellant contends that during the State's closing argument,
it commented on the invocation of his right to remain silent following arrest. We overrule
the issue.

 The comment alluded to a video of appellant's interrogation wherein he waived his
right to remain silent. According to the prosecutor, appellant's reaction (i.e. standing silent
with bowed head) to the charges being levied were not indicative of someone who was
innocent. Yet, when the video was made, appellant not only had been informed of his right
to remain silent but waived it. Appellant having waived that right during the interrogation,
the prosecutorial comments about his demeanor during the interrogation and as captured
on the video violated no right to remain silent. Garcia v. State, 126 S.W.3d 921, 924 (Tex.
Crim. App. 2004) (stating that appellant's complaint about his right to remain silent "'during
the time his statement was made'" was "nonsensical" since he waived his post -arrest right
to silence when he agreed to make the statement).

 Furthermore, the comment was nothing more than a summation of testimony uttered
by appellant during trial. Through that testimony, appellant explained the reason for his
demeanor as captured in the video. Furthermore, no one objected to the admission of that
testimony. Being a summation of evidence actually admitted at trial without objection, the
comment was proper. See Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)
(stating that the four permissible areas of jury argument are summation of the evidence,
reasonable deductions from the evidence, answer to argument of opposing counsel, and
proper pleas for law enforcement). 

Issues Two and Three - References to a Real Minor Girl


 In his second and third issues, appellant contends that the State should not have
been allowed to argue that 1) "[o]n August 16, 2003, but for the law enforcement agent, a
13 year old girl would have been sexually assaulted . . . [i]t is as easy as that" and 2)
appellant "scoured the internet, entered a 13 through 17 year old chat room and met this
girl for one reason." The former was improper since "[n]othing in the record even remotely
suggests that a thirteen year old girl would have been sexually assaulted . . . had appellant
not been arrested," according to appellant. The latter was allegedly improper because it
suggested that a "'real girl'" was involved, as opposed to a male undercover police officer. 
In other words, the prosecutor misstated the facts of record. We overrule the issues.

 As to the first utterance, the statement was used by the prosecutor to end her
description of the actions undertaken by appellant in preparing to have sex with someone
appellant believed to be a 13-year-old girl. And, when seen in context, it connotes that
given the evidence of appellant's belief, intent, or goal, and conduct in pursuit of that intent,
he would have engaged in sex with a 13-year-old female had the object of his intent been
such a girl rather than an undercover officer. See Chen v. State, 42 S.W.3d 926, 930 (Tex.
Crim. App. 2001) (stating that if the officer had been a 13-year-old girl, what the defendant
intended to accomplish would have been an actual crime). So viewed, the comment can
be interpreted as a reasonable deduction from the evidence, and a proper mode of
argument. Wesbrook v. State, supra. 

 Regarding the second utterance, the context of the statement is again of import. 
Through it, the prosecutor endeavored to explain how he met and what appellant intended
to do with someone he believed to be a 13-year-old girl. Furthermore, nothing was said
by the State of the "girl" being "real" as alleged by appellant. Indeed, the record is replete
with evidence illustrating that the "girl" to which the State referred was "Carrie," the fictitious
child played by the undercover officer. Given this, the statement also can be interpreted
as a summation or characterization of the evidence actually before the factfinder, and a
proper mode of argument. 

 Accordingly, the judgments of the trial court are affirmed. 


 Brian Quinn 

 Chief Justice

Do not publish.











ecord indicating that while appellant
consented to the search of the business premises after he was arrested, nothing indicates
that he consented to the search of his person prior to or after the arrest.

Standard of Review


 The pertinent standard of review needs little discussion. We find it sufficient to cite
the parties to Richardson v. State, 39 S.W.3d 634, 637 (Tex. App.-Amarillo 2000, no pet.) 
and Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App.1997) for a discussion of same. 
Furthermore, when evidence illustrates that the arrest of appellant was made without a
warrant, the burden lies with the State to prove the legitimacy of the arrest. Mercado v.
State, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998); Richardson v. State, 39 S.W.3d at 638. 


 Next, it is clear that an officer must have probable cause to arrest an individual
without an arrest warrant. Furthermore, probable cause to conduct such an arrest exists
when

 . . . at [the] moment [of arrest] the facts and circumstances within the
[arresting] officer's knowledge and of which (he) had reasonably trustworthy
information were sufficient to warrant a prudent man in believing that the
(arrested person) had committed or was committing an offense.


Shipman v. State, 935 S.W.2d 880, 883-84 (Tex. App.-San Antonio 1996, pet. ref'd), citing
Rance v. State, 815 S.W.2d 633, 635-36 (Tex. Crim. App. 1991). As can be readily seen,
the definition consists of two parts. One pertains to the existence of circumstances which
justify the belief that a crime occurred or is occurring, while the other involves the existence
of indicia sufficient to justify a belief that the person seized committed or was committing
the crime. The satisfaction of both elements is required before the arrest can be found
legitimate. Yet, this does not mean that the officer making the arrest must have personal
knowledge that a crime occurred or that the person he arrested committed it. This is true
because he may act at the direction of others, such as through a broadcast. And, when
that happens, the focus lies upon the information known to the officer who made the
broadcast or upon whose directive the arresting officer acted. Martinez v. State, 72
S.W.3d 76, 81 (Tex. App.-Amarillo 2002, no pet.). In other words, the collective
knowledge of those involved in the arrest determines the legitimacy of the arrest. 

 Nevertheless, the collective knowledge of all the officers does not alter the definition
of probable cause described above. Instead, it merely allows the arresting officer to act
based upon the knowledge of and circumstances seen by other officers. So, the arresting
officer remains prohibited from simply arresting anyone at whim. On the contrary, he must
still have legitimate basis to seize the particular person he seized despite the collective
knowledge of every other officer. See Rance v. State, 815 S.W.2d at 635-36 (stating that
though the arresting officer had reasonably trustworthy information that someone had
committed an offense, the question remained as to whether the person seized matched
the description of the offender disclosed in the broadcast). And, that basis must exist at
the time of the seizure for information or knowledge subsequently acquired cannot be used
to legitimize a prior arrest. Torres v. State, 868 S.W.2d 798, 801 (Tex. Crim. App. 1993). 
With this said, we turn to the cause before us.

Application of Standard


 On appeal, no one disputes that the record before us contains evidence upon which
a reasonably prudent officer could infer that a crime had occurred. Similarly undisputed
is that appellant was involved in the commission of that crime. Instead, the controversy
concerns whether Kelly had sufficient basis to arrest appellant at the time of the arrest. 
And, regarding the matter, the record depicts that at the time of the arrest Kelly knew
(either personally or otherwise (2)) only that 1) a reverse sting operation had occurred, 2)
those involved in the sting were apparently "Hispanic males," 3) Officer Robison had given
the bust signal, and 4) the person Kelly arrested was on the premises after Robison
signaled for the arrests to proceed and that he was a Hispanic male. Yet, nothing of record
discloses that Kelly knew the identity of those who actually participated in the transactions
which constituted the criminal acts (other than the identity of Robison, of course). Nor does
the record indicate that Robison broadcast a description of the suspects prior to appellant's
arrest. Even if he had, it is questionable whether anyone would have heard it given the
malfunctioning equipment. And, to the extent that Kelly heard some reference to "Hispanic
males" while "listening to the LPD radio," nothing of record illustrates who imparted that
information or why they concluded that "Hispanic males" were involved in the transaction.

 Nor do we have of record evidence regarding the actual number of "Hispanic males"
on the premises immediately prior to the arrest or during the sting operation. Robison
spoke of encountering three: appellant, Barraza, and Leija. Yet, if they were the only three
there is unknown. Nor does the record suggest that Kelly searched the premises for others
at any time before he arrested appellant. Again, he merely entered the building, saw a
Hispanic male and female, and arrested the male; and, Kelly candidly stated that he did
not know who appellant was at the time. So, no evidence exists to permit one to
reasonably infer that appellant must have been one of the participants in the criminality
because Kelly searched for other Hispanics and found none. (3) Again, the record illustrates
that he simply arrested the first Hispanic male he encountered on the premises. 

 The circumstances before us liken to those found deficient in Rance. There, a
group of officers were engaged in a drug operation. One witnessed a sale of contraband
and "radioed a description and location of the two sellers" to a van in which sat officer
Robinette. The latter immediately proceeded to the described locale and observed Rance
and a companion. The two were then arrested by Robinette. The Court of Criminal
Appeals found the arrest to be illegal. It did so because the State failed to tender into
evidence the description provided to Robinette by the officer who witnessed the sale. 
"Without being presented with that description, it [was] impossible for a reviewing court to
determine whether a prudent man would have believed [Rance] was one of the sellers . .
.," the court held. Rance v. State, 815 S.W.2d at 635. And, that Rance was found at the
locale along with another person immediately after the sale occurred did not warrant a
different outcome. Here, we have no evidence of a description of those involved in the
transactions with Robison, except for some vague information about "Hispanic males"
made by some unknown source and garnered by unknown means. Given this, appellant's
location at the crime scene around the time the crime occurred was not enough evidence
upon which a reasonably prudent officer could infer that appellant committed a criminal act,
thereby justifying an arrest. (4) In short, the State failed to present sufficient evidence to
support the existence of probable cause to arrest appellant without a warrant. 

 To the extent that probable cause was lacking for the arrest, the trial court erred in
refusing to suppress evidence obtained via the ensuing search. Furthermore, it was that
search which culminated in the discovery of the controlled substance upon which
appellant's conviction was founded. Thus, we cannot say that the error was harmless. 
Accordingly, we reverse the judgment and remand the cause. 


 Brian Quinn

 Justice


Do not publish.
1. None of the items were actually stolen, according to the officers. They were acquired from third-parties or the police property room for purposes of the operation.
2. Hearsay may be used to establish probable cause. Hinojosa v. State, 4 S.W.3d 240, 249 (Tex.
Crim. App. 1999), citing Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).
3. That two of the three individuals with whom Robison dealt had left the premises when the raid
transpired also proves troublesome. At the very least, that circumstance suggest two things. The first is that
some time lapsed between the transactions conducted by Robison and the subsequent raid and, second, that
the time was sufficient to allow individuals to leave the premises unseen by others. 
4. Whether Kelly would have lacked reasonable suspicion to detain appellant for investigatory purposes
and conduct a protective pat-down search is not before us. Nothing of record indicates that he questioned
appellant in any way before placing him in hand-cuffs and arresting him. See State v. Mora, 872 S.W.2d 803,
806 (Tex. App.-Amarillo 1994, no pet.) (holding that because the evidence does not reveal that "an
investigation was made" before, during or after the search and seizure, it could not be said that the officers
were merely detaining Mora for investigative purposes).